

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4696 | **DATE** | 4/10/2003 |
| **CASE TITLE** | Guardian Pipeline LLC vs. 950.80 Acres of Land etc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. We deny the motions to strike the sixth amended complaint. We also deny the motion to strike affidavits of Joseph E. Batis and Thomas C. Davis.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 14 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 370 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GUARDIAN PIPELINE, L.L.C., a Delaware )
Limited Liability Company, )
)
               Plaintiff, )
)
        vs. )    No. 01 C 4696
)
950.80 ACRES OF LAND, more or less, in )
Kendall and McHenry Counties, Illinois; )
RANDOLPH J. REIGH, et al., and UNKNOWN )
OTHERS, and WILL COUNTY ILLINOIS, a )
Body Politic and Corporate, )
)
               Defendants. )

DOCKETED
APR 14 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed a Sixth Amended Complaint, alleging, among other things, that the retained rights of owners "include *inter alia* the right to cross the pipeline right-of-way with utility, sewer, water, etc. lines as well as with roads and streets." A number of defendants have moved to strike the Sixth Amended Complaint, contending that the easement rights already granted to plaintiff restrict them from erecting any permanent structures upon the easement; that utility, sewer, water etc. lines and roads and bridges are permanent structures; that plaintiff is now attempting to amend its taking to include lesser rights than previously awarded; and that such an attempt is contrary to case law and Rule 71A(i) of the Federal Rules of Civil Procedure. According to those defendants, plaintiff has "'discovered that the judgment it won gave it more of a title than it wanted to pay for,' but it must pay for what it had won nevertheless." Vector Pipeline, L.P. v. 68.55 Acres of Land, 157 F.Supp. 2d 949 (N.D.Ill. 2001).

This case relates to the installation of a 36" pipe for the transmission of natural gas, generally with a 48" cover, along a 50' easement primarily through agricultural land. The easement provides, in part, as follows:

> THE UNDERSIGNED GRANTOR ... CONVEYS AND WARRANTS to Grantee, its successors and assigns, an exclusive perpetual easement in, through, upon and over a strip of land fifty (50) feet in width ... to lay, construct, test, operate, inspect, maintain, patrol, replace, repair, reconstruct, alter, relocate, and remove a pipeline with any associated valves, connections and appurtenances for the transmission of gas and associated condensates in, through, upon and over said strip of land, together with the right of ingress and egress to said strip of land at convenient points, as agreed to from time to time with Grantor, for such purposes and activities.
>
> * * * *
>
> Grantor agrees not to erect any permanent structures upon the permanent easement nor plant any trees within fifteen (15) feet of the centerline of the pipeline. Grantor agrees not to alter the existing grade of the permanent easement. Grantor also grants to Grantee, at any time and at no additional cost to Grantee, the right to clear the permanent easement of all trees, undergrowth and other obstructions ....
>
> * * * *
>
> Grantee shall have the right at any and all times to go upon said strip of land for the purpose of laying, constructing, testing, opening, inspecting, maintaining, patrolling, replacing, repairing, reconstructing, altering, relocating, enlarging, and removing said pipeline and clearing the easement as may be deemed necessary to conduct such operations. Grantee, after doing any of such work, shall restore the surface of the ground as nearly as possible to the condition as existing immediately prior to the commencement of such work. Grantee shall pay to Grantor reasonable costs for damage to growing crops or improvements resulting from any other operations by Grantee under this Easement Grant subsequent to construction of the pipeline; however, Grantee shall not be responsible for any trees planted by Grantor in the easement, as permitted above, which Grantee deems necessary to remove to facilitate any maintenance activities allowed under this Easement Grant.
>
> * * * *
>
> Grantor shall have the right fully to use and enjoy said strip of land except as the same may be necessary, convenient or incidental to the purposes herein granted to Grantee.

We first turn to Rule 71A. That rule provides, in 71A(e), that if a defendant has any objection or defense to the taking of the property, the defendant shall raise it by answer. No other pleading or motion asserting any additional defense or objection shall be allowed. The plaintiff may thereafter amend the complaint "at any time before the trial of the issue of compensation and as many times as desired," but not so as to result in a dismissal forbidden by subdivision (e). Rule 71A(f). Subdivision (i)(3) provides that before compensation has been determined and paid, the court may not dismiss the action as to any part of the property of which the plaintiff has taken possession, but shall award just compensation.

Defendants characterize their motions as motions to strike. But they are not. They are, procedurally, amended answers. Compensation has not been determined or paid, but plaintiff has taken possession. Defendants are entitled to just compensation. Plaintiff does not dispute that; it does not seek dismissal. But possession of what interest? Defendants claim that the interest possessed includes a right to prevent them from crossing the easement with utility, sewer, water etc. lines and roads and bridges, thus increasing the just compensation to which they are entitled. Certain of the defendants now move to strike the affidavits of Joseph E. Batis and Thomas C. Davis, relying upon Rule 12(f). But we are not discussing insufficient defenses to a complaint. Defendants appear to be relying upon familiar law relating to a Rule 12(b)(6) motion, which constrains a plaintiff from relying upon materials not referenced in the complaint in responding to the motion.

But defendants' contention is not a motion to strike or a Rule 12(f) motion or a Rule 12(b)(6) motion; it is an answer. Plaintiff in the Sixth Amended Complaint alleges it has taken a certain limited interest. Defendants in their "answers," claim that plaintiff has taken

considerably more than what plaintiff asserts. We could, we suppose, recognize that the parties have taken differing positions in the complaint and answer and leave the sorting out of who is right to the trial. But we also recognize the constitutional mandate is just compensation for a taking. If we wait, a defendant may base its valuation on the notion that the easement imposes a separation akin to that of the demilitarized zone bisecting the Korean peninsula (a notion, as we will explain, which is in error) and find that it has no credible evidence of valuation to offer. We think, then, we should provide some guidance respecting the extent of the taking.

It is clear, we believe, that the "not to erect any permanent structures" is a rather imprecise phrase. Various appraisers and parties were not quite sure what it meant, and inquired. They were told the easement allowed "road, street, etc." or "streets, curbs, gutters and sidewalks" or "roads or roads across the pipeline easement," provided there was a review of the plans by plaintiff, or the like. Others assumed it meant substantially what plaintiff claims it meant. One assumed it meant what defendants now claim it means. The inquiries and defendant discovery requests led to a letter from plaintiff to all defendants on May 31, 2002, which, in pertinent part, reads as follows:

> A number of questions and requests pertain to the post-construction status of the permanent easement area and its use by the landowner. As stated in the condemnation complaints and Exhibit C thereto, Guardian has acquired only a permanent easement for the construction and operation of one, 36-inch natural gas pipeline within the fifty-foot permanent easement and the incidental rights to patrol the right-of-way, inspect and repair the line and relocate it within the easement if required, and to clear the easement as necessary for those purposes (recall that the reference to "enlarge" was deleted by the Fourth Amended Complaint). With the exception of the temporary workspace easements until their expiration, Guardian has not sought or acquired any rights outside the permanent easement area. Access to the permanent easement area is as agreed with the landowner or via the right-of-way itself or from a

public road or way. The landowner retains all other rights in and to the permanent easement area except that permanent structures (i.e., these with foundations and/or which cannot be readily removed to allow access to the pipeline itself) cannot be constructed in the easement (unless by mutual agreement) and no trees can be planted within fifteen (15) feet of the centerline of the pipeline, per Exhibit C. Without limiting the respective rights of the parties, it is noted that landowners can cross the pipeline right-of-way with utility, sewer, water, etc. lines as well as roads and streets and make such other uses of it as they please that do not threaten or impair the safety, integrity, and operation of the line. There is no specific requirement for the use of slabs over the pipeline for crossings or for casing of utility facilities, which may cross over or under the line as is most safe at the location and in accord with applicable federal crossing requirements (generally one foot minimum separation although it may vary). Guardian has no procedures or requirement for granting "permission" to a landowner to use the permanent easement area since the landowner retains the right fully to use and enjoy the right-of-way strip except as necessary for Guardian to protect and operate the line. Guardian will establish and publish to landowners procedures for consulting about matters affecting the use of the permanent easement area and will cooperate with landowners on development plans and safety concerns, emergency contact and reporting numbers will also be provided.

The scope of the rights taken can only be understood in light of the purposes of the easement. Plaintiff, after construction of the pipeline, needs to be able to inspect and monitor the pipeline, which requires access to the easement. It also needs to be able to access the pipeline in order to maintain and repair it or, if necessary, to alter, relocate or remove it. And to maintain the pipeline plaintiff needs to avoid circumstances that cause a material risk of damage. Beyond that, the landowner has "the right fully to use and enjoy said strip of land except as the same may be necessary, convenient or incidental to the purposes herein granted to Grantee."

That grant restricts the construction of a residence on the easement. One cannot run a backhoe through a residence. Undoubtedly, moreover, the landowner cannot construct a super highway with a base approaching four feet from the surface and providing substantial

obstacles to trenching. Very likely, the landowner cannot construct a gravel road servicing a quarry, with the resulting heavy loads posing dangers of compaction damage. A road constructed down the length of the easement could cause serious access problems. Trees are not permitted within fifteen feet; their roots may damage the pipeline. But along the length of the pipeline from near Joliet to the Wisconsin border there have to be innumerable intersections of roads, utility lines, sewers, and water lines across the pipeline easement, in substantial harmony. It is no great engineering feat to temporarily trench and then repair a blacktop road. Other intersecting lines and pipes pose no real difficulties so long as plaintiff knows they are there.

"Permanent structures" can mean different things for different purposes, as various cases cited by defendants make clear. For some purposes even a sidewalk or a gravel path can be a permanent structure. But we think it has to be interpreted here with the purpose of the easement and the landowner's retained rights in mind. Indeed, we can envisage a time, were defendants' views to prevail, when a landowner, interested in developing its property or constructing an access road to move its farm equipment, would be strenuously arguing that it is entitled to do so because the contemplated use does not impinge upon the plaintiff's needs. And the landowner would be right. Contrary to some testimony (McCann dep. p.146), that easement does not put an invisible brick wall between the property on either side.

We do not read Vector Pipeline, L.P. v. 68.55 Acres of Land, *supra,* as contrary. There, apparently, plaintiff sought to lessen its express taking during the course of the valuation proceeding. Here we are dealing with the scope of the original taking. If a defendant were to expend considerable amounts in reliance upon a reasonable, even if erroneous, understanding

of what plaintiff's interest might be, perhaps there would be some basis for at least claiming reimbursement. But here, long before any appraisals by defendants relying upon a more expansive view of what they had given up, they were put on notice by the May 31, 2002, letter that plaintiff's taking was more modest. The Sixth Amended Complaint merely memorialized that notice, and that it could do. *See* Transwestern Pipeline Co. v. O'Brien, 418 F.2d 15, 20 (5th Cir. 1969).

We deny the motions to strike the Sixth Amended Complaint. We also deny the motion to strike affidavits of Joseph E. Batis and Thomas C. Davis. The Davis affidavit is, essentially, limited to validating various exhibits, such as the May 31, 2002 letter and McCann's deposition testimony, about which there is apparently no dispute. The subjective views of Batis cannot control the meaning of the easement, any more than can the subjective views of McCann. We note only that the affidavit references conform to what this court believes should have been self-evident.

                                                    JAMES B. MORAN
                                                    Senior Judge, U. S. District Court

April 10, 2002.